UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSE TORRES, #02-B-0993,

        Petitioner,

    -v-                                  06-CV-508(MAT)
                                                  **ORDER**

H. GRAHAM, Superintendent of
Auburn Correctional Facility,

        Respondent.

---

## I. Introduction

Petitioner Jose Torres ("petitioner") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Supreme Court, Monroe County on one count of Murder in the Second Degree(N.Y. Penal Law § 125.21[1]). Following a jury trial before Justice Francis Affronti, petitioner was sentenced to a period of incarceration of twenty-five years to life.

## II. Factual Background and Procedural History

Around 2:00 a.m. on the morning of July 4, 2001, Miguel Cruz ("Cruz" or "the victm") was "hanging out" with three friends on Hollister Street in the City of Rochester, setting off fireworks and drinking beer. T. 407-08, 427.[1] A man suddenly ran toward them, and, approaching Cruz from behind, shot him four times, killing him

---

[1] Citations to "T.__" refer to pages of the trial transcript.

1

instantly.[2] T. 409, 430, 447, 509. The others ducked or fled and the man ran off.

Petitioner was brought to investigators attention in part by a career criminal named James VerNooy,[3] who lived in a boarding house on Lake Avenue directly below Stanley Hurlbert. Both Vernooy and Hurlbert testified at trial. Several hours after the shooting at approximately 7:30 a.m., petitioner entered VerNooy's apartment acting "high" and "skitsy." T. 462-63, 474. VerNooy testified that petitioner was a drug abuser and often needed money. T. 490. That morning, petitioner asked VerNooy for money, claiming that he needed it to get out of town because he had killed a man during the night. T. 462-64, 474. VerNooy and Hurlbert were skeptical of petitioner's story until they turned on the local television news channel. When a report came on about the shooting, petitioner said, "Yeah. that's me. I did that." T. 462-63, 476. VerNooy refused to give petitioner money and told him to leave. Later that day, VerNooy discovered that his keys were missing, and that his stereo, television, and other electronics had been taken from his apartment. Finding petitioner's wallet on his couch, VerNooy

---

[2] The autopsy revealed that the victim had been shot four times: in the arm, shoulder, neck, and head. Two of the projectiles and part of a third were recovered from the body. A fourth was embedded in a tree at the scene of the shooting. T. 377-82, 388, 509-13, 520.

[3] At the time, VerNooy was on supervised release after serving three years in federal custody for conspiracy to distribute cocaine and had been convicted of numerous state crimes, including burglaries. T. 480-86.

2

called police, and petitioner was arrested the next morning. T. 476-80, 501-02, 570.

After his arrest, Rochester Police investigators met with petitioner at the Rochester Safety Building. Petitioner was apprised of and waived his Miranda rights, and investigators began questioning him about the burglary. Petitioner's wife, Kim Torres, was allowed to briefly see petitioner in the interview room. After an emotional conversation with his wife, petitioner eventually acknowledged responsibility for the burglary and the shooting. Petitioner told investigators that he had an argument with the victim earlier that night at a gas station, in which they had exchanged racial epithets.[4] Petitioner, who "had a lot to drink," said that he was still angry, so he and his acquaintance followed the victim's car. They continued to follow Cruz to Hollister Street, where he was standing with his friends, and petitioner shot at Cruz four times. Afterward, petitioner said that he went to the Driving Park Bridge and threw the gun into the river. He then went to VerNooy's apartment, where he stole electronic equipment. T. 640-41, 646-47. The next afternoon, petitioner showed police where he had thrown the gun from the bridge into the Genesee River. Divers found two bullets and four shell casings. T. 523-28, 535-36, 543-46, 648-49.

---

[4] According to investigators, petitioner thought that the victim was black, and "felt bad" upon learning that Cruz was in fact Puerto Rican. He went on to tell investigators that he "had a problem with black people" after his niece was murdered by an African-American man in Buffalo. T. 640-41.

Following a jury trial, petitioner was found guilty of second degree murder and was sentenced to 25 years to life imprisonment. Petitioner filed his first motion for *vacatur* pursuant to New York Crim. Proc. Law ("C.P.L.") § 440.10 on September 12, 2003, alleging ineffective assistance of trial counsel, and that his confession was fabricated by the detectives who interviewed him. See Respondent's Appx. C. The state court denied petitioner's ineffective assistance of counsel claim on the merits, and did not address the issue of his confession. See Decision and Order, No. 01-0543 dated 11/18/2003; Appx. G. Leave to appeal the denial was denied on January 22, 2004. On direct appeal, petitioner raised the following issues: 1) the trial court made an improper Sandoval ruling; 2) the trial court failed to inquire into possible jury taint; 3) prosecutorial misconduct; and 4) the conviction was against the weight of the evidence. The Appellate Division, Fourth Department, unanimously affirmed petitioner's conviction. People v. Torres, 17 A.D.3d 1046 (4th Dept.); lv. denied 5 N.Y.3d 811 (2005).[5]

On July 13, 2006, petitioner sought a writ of *error coram nobis* before the state court, alleging ineffective assistance of appellate counsel. That motion was denied. Torres, 32 A.D.3d 1245 (4th Dept. 2006); lv. denied 8 N.Y.3d 991 (2007). Petitioner's

---

[5] In his application for leave to appeal to the New York Court of Appeals, petitioner only raised the Sandoval issue. See Letter Requesting Leave dated 5/18/2005 at Appx. O.

second C.P.L. § 440 motion alleging newly discovered evidence was denied on November 20, 2007. See Decision Order, No. 01-0543 dated 11/20/2007; Appx. Z-6. While these motions were pending in state court, petitioner filed a petition seeking habeas corpus relief with this Court pursuant to 28 U.S.C. § 2254. (Dkt. #1). After multiple motions seeking to stay the petition and for extensions of time, petitioner filed an amended petition per the direction of the court. (Dkt. ##25, 26). Petitioner's amended petition is comprised of four claims: 1) ineffective assistance of appellate counsel; 2) insufficiency of the evidence; 3) ineffective assistance of trial counsel; 4) defective Sandoval hearing; and 5) actual innocence. (Dkt. #26). Respondent has filed a response and memorandum of law, opposing the amended petition on procedural grounds and on the merits. (Dkt. #28). For the reasons that follow, the Court finds that petitioner is not entitled to habeas relief.

**III. Discussion**

    **A.    General Principals Applicable to Federal Habeas Review**

        **1.    Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an

unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1),(2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

## 2. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995)."The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989); other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Grey, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should

be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977).

### 2. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to *bar consideration* on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not

7

the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" id. (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

**B.   The Habeas Petition**

**1.   Procedurally Defaulted Claims**

In his petition for habeas corpus, petitioner alleges that the evidence was legally insufficient to support the charge of murder (Ground Two) and the trial court erroneously permitted all of petitioner's past criminal history to be brought out at trial (Ground Four). Petition ("Pet.") ¶ 22(B), (D).

Ground Four, which alleges a Sandoval[6] violation, was properly exhausted in the state courts, but was found by the Appellate Division to be unpreserved for direct review pursuant to New York's "contemporaneous objection rule", codified at C.P.L. § 470.05(2).[7] It is well-settled that "federal habeas review is

---

[6] People v. Sandoval, 34 N.Y.2d 371 (1974) (Admissibility of prior convictions or proof of prior commission of specific criminal, vicious, or immoral acts to impeach a criminal defendant's credibility).

[7] "For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in reponse to a

foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground [for dismissing a claim], even where the state court has also ruled in the alternative on the merits of the federal claim." See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). The Second Circuit has recognized New York State's contemporaneous objection rule as an adequate and independent state procedural rule which may preclude federal habeas review. See Garcia v. Lewis, 188 F.3d 71 (2d Cir. 1999). Here, the Appellate Division relied on New York's contemporaneous objection rule to hold that petitioner had failed to object and preserve his argument that there was an error in the trial court's Sandoval ruling, which demonstrates that the court's decision that the claim was unpreserved rested on a state procedural rule. Thus, petitioner's claim is procedurally barred from being raised before this Court for habeas review.

Ground Two (alleging insufficiency of the evidence) appears to be raised for the first time in the instant petition, and is therefore unexhausted. This issue was not brought before the state court on direct appeal, and petitioner cannot appeal this claim in the Court of Appeals because he has already made one request for leave to appeal to which he is entitled. See N.Y. Court Rules

---

protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered." C.P.L. § 470.05(2).

§ 500.10. Collateral review of this is also barred because it could have been raised on direct appeal but was not. C.P.L. § 440.10(2)(c). Thus, any attempt by petitioner to seek state court review pursuant to § 440.10 would be futile. In sum, petitioner's claim, although is technically unexhausted, must be deemed exhausted since it is procedurally defaulted.

Because the claims set forth in Grounds Two and Four of the petition are subject to a procedural bar, they are precluded from habeas review. This Court may reach the merits of these claims, despite the procedural default, if petitioner can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). A fundamental miscarriage of justice means a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). Petitioner does not allege cause or prejudice, and he has not made a colorable showing of actual innocence so as to warrant invocation of the "miscarriage of justice" exception.[8] See McCleskey v. Zant, 499 U.S. 467, 495

---

[8] Petitioner has advanced a claim of actual innocence in this proceeding based on "newly discovered evidence" in the form of sworn affidavits from inmates in prison who were supposedly present at the shooting and knew for a fact that petitioner was not the shooter. Even if the Court is to consider the affidavits as "new evidence of actual innocence" to determine whether petitioner can fulfill the fundamental miscarriage of justice exception, petitioner cannot establish that the evidence is reliable. Schlup v. Delo, 513 U.S. 298, 324 (1995). A more detailed discussion of petitioner's claim of actual innocence is set forth *infra* at point III.B.3.

(1991). Consequently, he cannot overcome the state procedural bar, and this claim is dismissed.

### 2. Ineffective Assistance of Counsel

Grounds One and Three of the petition allege ineffective assistance of trial and appellate counsel. Pet. ¶ 22(A), (C).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

The Strickland test has been extended to claims regarding the performance of appellate counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Counsel need not advance every nonfrivolous argument that could be made on petitioner's behalf. Mayo, 13 F.3d at 533. Even though a petitioner seeking to prove ineffective assistance of counsel has an extremely high burden, he may establish constitutionally inadequate performance "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id.

### a. Ineffective Assistance of Trial Counsel

Here, petitioner claims that his trial counsel was ineffective for failing to: 1) present a defense; 2) investigate the crime scene; and 3) file an alibi notice and call alibi witnesses. Pet. ¶ 22(C). In denying petitioner's § 440 motion, the state Supreme Court held that "[petitioner's] affidavit does not refute his trial attorney's claim that [petitioner] directed him not to call his mother and sister as witnesses. Moreover, [his] submissions do not establish that he had a viable alibi defense." See Appx. G; see also Appx. B, C (Correspondence dated 2/28/03 and 9/15/09). With respect to petitioner's allegations that trial counsel did not present a defense or investigate the crime scene, the Court finds these claims to be plainly meritless. The record reflects that trial counsel actively, ably, and vociferously participated in every stage of trial, and argued the appropriate motions

throughout. Petitioner does not elaborate on how visiting the crime scene would have aided in his defense. Although petitioner argues that counsel failed to call certain alibi witnesses, correspondence between petitioner and his attorney establishes that petitioner requested certain witness not be called at trial. In sum, the record belies petitioner's claim that counsel was ineffective. Petitioner has not alleged that his attorney's conduct was objectively unreasonable, and for that reason the Court need not determine whether petitioner was prejudiced by counsel's performance. See, e.g., Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (" '[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.' " (alterations in original) (quoting Strickland, 466 U.S. at 697)).

### b. Ineffective Assistance of Appellate Counsel

Petitioner next argues that his appellate counsel was ineffective for "perfect[ing] issues never presented to the trial jury . . . and rais[ing] unpreserved issues." Pet. ¶ 22(A). Specifically, petitioner alleges that his appellate counsel improperly perfected an unpreserved weight-of-the-evidence claim. Petitioner, however, labors under a misapprehension of New York State law, in that there is no preservation requirement for preservation of a weight of the evidence claim. See People v. Danielson, 9 N.Y.3d 342, 348-349 (2007); People v. Romero, 7 N.Y.3d

633 (2006). In any event, petitioner's argument that appellate counsel was ineffective for attempting to perfect an issue that was not preserved for appellate review also fails. Courts in this Circuit have repeatedly held that appellate counsel is not ineffective for raising an unpreserved issue. See Sutherland v. Senkowski, No. 02-CV-3833, 2003 WL 22953066 at *12 (E.D.N.Y. Oct. 17, 2003) ("Although an appellate counsel is limited by the trial record, he or she can raise an unpreserved issue in the hope of convincing the appellate court to review the unpreserved issue in the exercise of its interest of justice jurisdiction.") (citing C.P.L. § 470.15(6)(a)); Richburg v. Hood, 794 F.Supp.75, 77 (E.D.N.Y. 1992) ("This court cannot conclude that the decision by appellate counsel to raise an unpreserved issue on appeal and to address this issue to the interest-of-justice jurisdiction of the appellate court constituted 'representation ... below an objective standard of reasonableness.'") (quoting Strickland, 466 U.S. at 687-88, 694). Because petitioner cannot demonstrate that his appellate counsel was objectively unreasonable, the Appellate Division's rejection of petitioner's writ of *error coram nobis* was not contrary to or an unreasonable application of Supreme Court law.

### 3. Denial of § 440 Hearing / Actual Innocence

In a C.P.L. § 440 motion brought before the state court on August 30, 2007, petitioner claimed that newly discovered evidence

showed that he was actually innocent of the murder for which he had been convicted. He presented the court with sworn affidavits from two witnesses that allegedly identified the person who actually committed the crime. Petitioner argues here that "[t]he motion should have been granted or at least an evidentiary hearing held." Pet. ¶ 22(E).

The proposed evidence came in the form of two affidavits, one from Orlando Hernandez, and the other from Louis Vasquez. Both men were in the custody of New York State Department of Correctional Services and were childhood friends of petitioner. The two similarly-worded affidavits indicated that a man known as "Shoupie" or "Mechanico" shot at Cruz at the behest of a man named "Ray", a/k/a "Albert". Neither statement provided a first or last name. Appx. Z-2. Louis Vasquez claimed that he was a witness to the shooting, but recanted his statement shortly after executing the affidavit, indicating that he did not write the statement, knew nothing about the case, and signed the paper just to "help out" petitioner. Hernandez's statement simply alleged that "Ray" told him about the shooting, and lacked salient details pertaining to petitioner's innocence. See Appx. Z-3; Z-3.

The Supreme Court denied petitioner's § 440 motion on the grounds that petitioner failed to show that the newly discovered evidence could not have produced at trial with due diligence, that the affidavit of Vasquez was inherently unreliable, and because

Hernandez's affidavit was based on inadmissible hearsay. See Decision and Order, No. 01-0543, dated 11/20/2007; Appx Z-6.

At the outset, the Court notes that procedural errors in a proceeding collateral to the judgement of conviction generally do not set forth a claim cognizable in a federal habeas proceeding, see, e.g., Coleman v. Thompson, 501 U.S. 722, 752-53 (1991), and a majority of district courts in this Circuit have observed that "'federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.'" Guzman v. Couture, 99CV11316(RMB)(HBP), 2003 WL 165746 at *13 (S.D.N.Y. Jan. 22, 2003) (citing Franza v. Stinson, 58 F.Supp.2d 124, 151 (S.D.N.Y. 1999)); Ruine v. Walsh, No. 00 Civ. 3798RWS, 2005 WL 1705147 at *24 (S.D.N.Y. 2005) (A trial court's alleged error in denying a C.P.L. § 440 motion without a hearing is "not an independent basis for finding that [petitioner's] constitutional rights were violated."); Parker v. Ercole, 582 F.Supp.2d 273, 299 (N.D.N.Y. 2008) (holding that state prisoners have no federal constitutional right to post-conviction proceedings in state courts); Corchado v. Rabideau, 576 F.Supp.2d 433 (W.D.N.Y. 2008) ("Although the Second Circuit has not directly addressed this issue, the district court decisions within the circuit have followed the majority rule.").

Further, petitioner's stand-alone claim of "actual innocence" is similarly not cognizable in this habeas proceeding. "A claim

16

'based on newly discovered evidence ha[s] never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir. 2003) (quoting Herrera v. Collins, 506 U.S. 390, 400 (2d Cir. 2003). The Supreme Court in Herrera reasoned that, "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." 506 U.S. at 401. Here, petitioner has not alleged an underlying constitutional violation in connection with the failure of the two witnesses to present their observations about "Shoupie", the individual they believed to be the actual shooter. In any event, neither affiant purported to have any first-hand knowledge of the crime or the people involved, and the statements had no probability of affecting the outcome of petitioner's trial. See Appx. Z-6. Because petitioner has not established a constitutional violation arising out of his state criminal proceedings, habeas relief does not lie for this ground. In light of Herrara v. Collins, the Appellate Division's rejection of his claim pertaining to the allegedly new exculpatory evidence was neither contrary to, nor an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

**IV. Conclusion**

For the reasons stated above, Jose Torres's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:   December 4, 2009
         Rochester, New York